UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

ROBERT MANZO-SMALL,

          Defendant.

Civil No.05-480-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      Defendant was indicted on December 6, 2005, for Felon in Possession of a Firearm and for Possession of an Unregistered Sawed-off Shotgun.  On January 24, 2006, defendant was arraigned before Judge Hubel, entered a not guilty plea and was detained.  Defendant now files a Motion to Suppress Statements and Physical Evidence [10] obtained by officers on October 26, 2005.  This court heard oral argument in this matter on April 7, 2006.  For the reasons discussed

1 - OPINION AND ORDER

below, defendant's Motion to Suppress Statements and Physical Evidence [10] is GRANTED.

**FACTUAL BACKGROUND**

On October 26, 2005, Marion County Sheriff's Office deputies Cypert, Greer and Sergeant Sweet went to the home of Lisa Manzo and her family located at 230 44th Place NE in Salem, Oregon.  The officers were looking for defendant Robert Manzo-Small (Manzo-Small or defendant), for whom they had an arrest warrant on allegations that he had violated his state post-prison supervision.  The defendant's brother, Mr. Marcos Manzo, answered the door and permitted the officers to enter the residence.  Upon entry into the residence to search for the defendant, Sergeant Sweet tripped on a blue backpack that was lying on the floor against the wall which led into the residence's living room area.  Robert Manzo-Small was subsequently discovered in the living room of the home, crouching behind a chair to hide himself.  During the arrest, defendant asked deputy Cypert if the deputy could retrieve defendant's shoes which were located next to a computer desk and the blue backpack.  The officer escorted the defendant to that area, obtained the shoes and took Manzo-Small outside of the residence without incident.

After taking the defendant into custody, Sergeant Sweet retrieved the backpack and felt what he considered to be a firearm inside.  Sergeant Sweet inquired if the backpack belonged to defendant's brother.  After defendant's brother responded that it did not belong to him, Sergeant Sweet requested that the defendant's brother unzip the backpack in the officer's presence.  The backpack contained a loaded sawed-off shotgun which is the subject of the indictment in this case.  Following the receipt of his *Miranda* rights, deputy Cypert asked the defendant why he had possession of the firearm to which defendant responded, "because [he] was stupid." Defendant later denied knowledge or ownership of the firearm.

2 -- OPINION AND ORDER

**DISCUSSION**

Defendant moves the court to suppress the firearm and any statements that he made after the search and seizure.  The issue is whether the officers properly searched and seized the blue backpack which contained the sawed-off shotgun.  Specifically, the parties dispute whether the search and seizure of the backpack without a warrant was valid under the "search-incident-to-arrest" exception to the Fourth Amendment's warrant requirement.  This court finds that the search was invalid under the exception.

**I.**     **Suppression of the Blue Backpack.**

       **Search-incident-to-arrest.**

Officers may conduct a search-incident-to-arrest of the area within an arrestee's immediate control to search for weapons or other destructible evidence.  *Chimel v. California*, 395 U.S. 752, 763 (1969).  The Ninth Circuit utilizes a two-part test (hereinafter *Turner* factors) to determine the validity of a search-incident-to-arrest.  *United States v. Turner*, 926 F.2d 883, 887 (9th Cir. 1991).  To be valid under *Turner*, (1) the area searched must be that area under the arrestee's immediate control when he was arrested, and (2) events between the time of the arrest and search must not render the search unreasonable.  *Id.*

The government argues that the search and seizure of the backpack was permissible under *Turner* because the backpack was: 1) within defendant's "lunge" area during and after his arrest and 2) the search took place within a short period of time subsequent to the arrest.  For the reasons detailed below, this court finds that the backpack was not within the defendant's immediate control as required by *Turner*.  Because the court finds that the first *Turner* factor is not satisfied in the instant case, no discussion of the second *Turner* factor is necessary.

The court notes, however, that Sergeant Sweet's actions subsequent to the defendant having been taken into custody create doubt regarding whether the *second* Turner factor is satisfied under the facts of this case.  Namely, Sergeant Sweet took the backpack under his exclusive control and directed a third party to unzip the backpack.  Sweet's actions were inconsistent with the general concern for officer safety which is the main principle underlying the "search-incident-to-arrest" exception.

### **Defendant's Immediate Control.**

The government argues that the backpack was close to the defendant during his arrest. The government also contends that, after the arrest, the defendant asked deputy Cypert to retrieve his shoes which were located close to the backpack.  The government asserts that the defendant's request that deputy Cypert retrieve his shoes brought the backpack within defendant's "lunge" area for a second time.[1]  In addition to *Turner*, the government cites two Ninth Circuit cases[2] to support their position regarding the first *Turner* factor.  Both cases are distinguishable from the instant case.

---

[1] The court finds this argument unavailing.  Although the defendant requested that deputy Cypert retrieve his shoes, the deputy chose to escort the defendant over to the area where the shoes were located in order to obtain the shoes.  *See, e.g., United States v. Licata*, 761 F.2d 537, 540, n. 2 (9th Cir. 1985) ("Arresting officers are not permitted to lead the accused from place to place and use the presence in each location to justify a search or seizure") (citations omitted); *see also United States v. Griffith*, 537 F.2d 900, 904 (7th Cir. 1976).  Thus, the officers' unilateral actions created any risk or danger that defendant could obtain the backpack in question and cannot justify their search of the bag based upon an immediate control argument.

[2] The government also cites *United States v. McLaughlin*, 170 F.3d 889 (9th Cir. 1999) to support their argument.  This court finds that *McLaughlin* is inapposite as it did not deal with the search-incident-to-arrest exception.  Rather, that case dealt with the "auto-exception" articulated by the Supreme Court in *New York v. Belton*, 453 U.S. 454, 460-461 (1981), and was supported by a different rationale.

4 -- OPINION AND ORDER

In *United States v. Nohara*, 3 F.3d 1239, 1243 (9th Cir. 1993) the court approved the validity of a search-incident-to-arrest where defendant Nohara had been holding a black bag which was later seized by federal agents.  In that case, federal agents viewed the defendant holding a black bag prior to his arrest.  The agents also testified that they viewed the defendant holding a methamphetamine pipe in addition to the black bag.  *Id.* at 1240.  Additionally, the agents' search-incident-to-arrest uncovered controlled substances and sums of cash which were located in plain view once the officers conducted a protective sweep of Nohara's apartment.  The *Nohara* court held that the first *Turner* factor was met because the agents viewed Nohara holding the black bag as he opened the door to his apartment and thus the bag was "both under his control and likely to contain destructible evidence."  3 F.3d at 1243.  The facts in the instant case distinguish it from *Nohara*.

Here, the officers did not view defendant holding the blue backpack when they entered the residence.  In fact, deputy Cypert testified that, when he viewed the defendant through the front door, the defendant stood in the hallway entrance to the residence and that the defendant's back was turned to the front door.  Deputy Cypert did not testify that he witnessed defendant holding the blue backpack or that he noticed the blue backpack on the floor prior to entering the residence.  Furthermore, the officer's testimony established that the defendant was in the residence's living room, crouching behind a sofa chair, when the arrest occurred and not within the immediate vicinity of the blue backpack.  The court also notes that the parties' testimony established that the defendant was between eight to twelve feet away from the backpack during the arrest.  This fact further negates the government's argument that the backpack was within Manzo-Small's "immediate control" during the arrest.  Accordingly, the government's reliance on

5 -- OPINION AND ORDER

*Nohara* is misplaced.

Likewise, the government contends that the holding in *United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir. 1996), supports their "immediate control" argument.  In *Hudson*, the court upheld a search-incident-to-arrest in which defendant Hudson was called out from his bedroom where a rifle case was subsequently located and searched.  The court noted that, when Hudson was called out of the bedroom and arrested, an arresting officer noticed a rifle case near his feet. 100 F.3d at 1420.  Moreover, the court held that, "[a]lthough [a] rifle was contained in the case, it was nevertheless well within Hudson's reach[.]"  *Id.*  This court finds that *Hudson* is also distinguishable from the instant case.

The *Hudson* court's decision regarding the first *Turner* factor rested on the fact that an arresting officer viewed a rifle case at the defendant's feet and, consequently, "well within Hudson's reach[.]"  *Id.*  Unlike in *Hudson*, the testimony in the instant case fails to establish that the arresting officers viewed the blue backpack within Manzo-Small's "immediate control" prior to his arrest.  Moreover, when the officers arrested Manzo-Small in the residence's living room, the defendant was crouched behind a sofa chair and located between eight to twelve feet away from where the blue backpack was located, well outside of the defendant's actual possession or his arm's reach.  Thus, *Hudson* also fails to support the government's argument regarding the first *Turner* factor.

Accordingly, this court finds that first *Turner* factor is not satisfied given the facts of the instant case.  The blue backpack was not within the "immediate control" of defendant Manzo-Small at the time of his arrest as required under *Turner* and therefore no valid search-incident-to-arrest occurred.  Consequently, the blue backpack and the firearm discovered inside of the

backpack must be suppressed in accordance with the Fourth Amendment's warrant requirement.

**II.    Suppression of Defendant's Statements Subsequent to Arrest.**

The defendant also contends that statements made subsequent to the search of the backpack are tainted by the illegality of the initial search and seizure and should be suppressed accordingly.  This court finds that the facts of the instant case require the suppression of the statements made by defendant Manzo-Small while he was in deputy Cypert's patrol car.

When obtained by means of an unlawful invasion, the Fourth Amendment's exclusionary rule protects against the use of physical evidence or verbal statements against a defendant.  *See, Wong Sun v. United States*, 371 U.S. 471, 484 (1963).  The policies underlying the exclusionary rule do not distinguish between physical and verbal evidence.  *Id.* at 486.  The rule protects primary evidence obtained as a direct result of an illegal search or seizure as well as evidence subsequently discovered and determined to be derivative of an illegality or "fruit of the poisonous tree."  *United States v. Pulliam*, 405 F.3d 782, 785 (9th Cir. 2005) (citations omitted).  Suppression of such evidence as "fruit" is not justified unless the original "'illegality is at least the 'but for' cause of the discovery of the evidence in question.'"  *Id.* at 786, *quoting Segura v. United States*, 468 U.S. 796, 804 (1984).

Here, deputy Cypert interrogated the defendant regarding why he was in possession of the sawed-off shotgun to which he responded, "because [he] was stupid."  Cypert's questioning and the defendant's subsequent statement occurred after, and as the direct result of, Sergeant Sweet's impermissible search and seizure of the backpack.  But for Sergeant Sweet's invalid search and seizure of the backpack, deputy Cypert would have had no grounds for soliciting the defendant's statement regarding the shotgun.  *Pulliam*, 405 F.3d at 785.  Therefore, despite

defendant's receipt of *Miranda* rights,[3] his statements are fruits of the illegal search and seizure

of the backpack and must also be suppressed accordingly.

## CONCLUSION

     For the foregoing reasons, defendant's Motion to Suppress Statements and Physical

Evidence [10] is GRANTED.

     IT IS SO ORDERED.

     Dated this  _21_  day of April 2006.

                            /s/Ancer L.Haggerty

                            ANCER L. HAGGERTY

                       United States District Judge

---

[3] Although relevant when determining whether to suppress statements made subsequent to an illegal invasion under the Fourth Amendment, the receipt of *Miranda* warnings *per se* does not invariably break the causal connection between the illegality and the prejudicial statements in question. *Kaupp v. Texas*, 538 U.S. 626, 633 (2003) (citations omitted). This court finds that the defendant's receipt of *Miranda* warnings, standing alone, does not break the causal connection between Sergeant Sweet's search of the bag and the defendant's statement to deputy Cypert.

8 -- OPINION AND ORDER